UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**MARIA CARDENAS,**

 Plaintiff,

v.          **No. 4:23-cv-00745-P**

**UNITED STATES OF AMERICA, ET AL.,**

 Defendants.

## OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss. ECF No. 11. Having considered the briefing and applicable law, the Court determines the Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Maria Cardenas was sexually assaulted by officer Luis Curiel while in custody at Federal Medical Center, Carswell ("FMC Carswell"). Before the assault, Cardenas allegedly reported Curiel's inappropriate sexual advances to the Bureau of Prisons ("BOP"). Cardenas says the relevant Prison Investigative Authorities[1] failed to launch a timely investigation and disciplinary proceeding against Curiel. Emboldened by this perceived lack of consequences, Curiel's sexual advances turned into outright sexual assaults. The Prison Investigative Authorities eventually investigated the incident, resulting in Curiel's criminal prosecution in 2022.

Cardenas sued the Government under the Federal Tort Claims Act ("FTCA"), arguing the BOP's failure to timely investigate/discipline

---

[1] To avoid incessant acronym usage, the Court adopts Cardenas's nomenclature and collectively calls the relevant law enforcement agencies "Prison Investigative Authorities." In addition to the BOP, these include the Office of Internal Affairs ("OIA"), the Office of Inspector General ("OIG"), the Special Investigative Services Unit ("SIS"), and the Department of Justice ("DOJ"). The Court signposts wherever individual entities are relevant.

Curiel was negligent and proximately caused her assault. Cardenas's Complaint alleges widespread failures within the BOP to investigate prison officials accused of sexual misconduct and to enforce both internal Standards of Employee Conduct and the policies mandated by the Prison Rape Elimination Act ("PREA").

The Government now moves to dismiss, arguing the Court lacks subject-matter jurisdiction over Cardenas's claims. *First*, the Government says Cardenas didn't exhaust her administrative remedies before suing. *Second*, the Government says Cardenas's claims are barred by the FTCA's discretionary-function exception. *Third*, the Government says its immune from Cardenas's lawsuit because Curiel's torts were committed outside the scope of his employment. As explained herein, the Court disagrees with the Government on points one and three and partially disagrees with the Government on point two.

## LEGAL STANDARD

"Subject matter jurisdiction defines the court's authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984). Certain types of cases presumptively fall beyond the ambit of a federal court's subject-matter jurisdiction. *Id.* For instance, "[a]bsent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." *Stramaski v. Lawley*, 44 F.4th 318, 321–22 (5th Cir. 2022) (citation omitted). In this way, sovereign immunity is not like other affirmative defenses; rather, the doctrine "operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state [actor]." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). While attacks on subject-matter jurisdiction can't be waived, parties typically bring them at the earliest possible juncture—namely, through a Rule 12(b)(1) motion. *See* FED. R. CIV. P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). At the pleadings stage, plaintiffs carry their burden by "alleg[ing] a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

"Unlike a Rule 12(b)(6) motion which is confined to evaluating the pleadings, a 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (cleaned up). But "where issues of fact are central to both subject matter jurisdiction and the claim on the merits, . . . the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004). The Court asks three questions to decide if a jurisdictional issue is "inextricably intertwined" with a merits issue. *Pickett v. Tex. Tech Univ. Health Sciences Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022). *First*, does the "statutory source of jurisdiction differ[] from the source of the federal claim?" *In re Southern Recycling, LLC*, 982 F.3d 374, 379–82 (5th Cir. 2020). *Second*, can "the jurisdictional issue . . . be extricated from the merits and tried as a separate issue?" *Id.* (citation omitted). *Third*, does "judicial economy favor[] early resolution of the jurisdictional issue?" *Id.*

## ANALYSIS

The Court's analysis hinges on three questions. *First*, does Cardenas allege a plausible negligence claim that supports jurisdiction under the FTCA? If she doesn't, dismissal is easy. *Second*, even if she alleges a plausible claim, did she exhaust her administrative remedies before suing? If she didn't, her case is out. *Third*, assuming Cardenas states a plausible claim and exhausted her administrative remedies, does the FTCA's discretionary-function exception nevertheless bar her claim? The Government argues a fourth point related to Curiel's actions as outside the scope of his employment, but the Court finds that line of inquiry immaterial to the instant Motion.

### A. Cardenas alleges a plausible FTCA claim.

Starting with the root inquiry, Cardenas must "allege a plausible set of facts establishing jurisdiction" for her FTCA claim. *Sebelius*, 691 F.3d at 652. The Court thinks she does. The Government says Cardenas pulls a fast one and couches intentional-tort claims regarding Curiel's assault in negligence terms. *See* ECF No. 11 at 8 ("[A]lthough Cardenas alleges

3

her claims are about the asserted negligence of these DOJ entities, her claims really are about the sexual assault committed by Curiel."). Ordinarily, this argument would lead to a separate jurisdictional analysis regarding the viability of FTCA claims for intentional torts by law enforcement officials. *See Millbrook v. United States*, 569 U.S. 50, 51–54 (2013). But the Court need not conduct that analysis here because Cardenas's claims sound in negligence, not intentional tort.

Cardenas says "the BOP has created and maintained a sanctuary for male correctional officers to sexually assault and abuse female inmates." ECF No. 1 at 4. Citing a recent Congressional investigation which found the BOP "largely tolerated or ignored" inmates' complaints of sexual harassment,[2] Cardenas explains how she experienced the BOP's systemic failures firsthand. *See id.* at 4–13. Whether or not the Complaint supports such a damning conclusion regarding the BOP's failures, it certainly supports an FTCA negligence claim.

To be sure, Cardenas's assault by Curiel is relevant, but only insofar as it shows the culmination of the BOP's broader alleged failures. From Cardenas's perspective, the BOP's unresponsiveness enabled Curiel to commit worse and worse atrocities, proximately causing her assault. *Id.* at 4. While the BOP points to Curiel's investigation and criminal prosecution, it misses the point. Cardenas's point isn't that the BOP didn't respond to Curiel's crime; her point is that earlier BOP action would have likely prevented the crime altogether. Put differently, an unchecked bully is an emboldened bully.

The Complaint alleges myriad breaches of PREA and the BOP's Standards of Employee Conduct. *See, e.g.*, *id.* at 9–11, 15–16. The issue isn't the rules themselves, but the BOP's alleged failure to implement them—the best policies in the world mean nothing if agencies ignore them or negligently fail to enforce them. Accordingly, the Court disagrees that Cardenas's negligence claim is a Trojan horse for intentional tort claims against Curiel. Rather, the above allegations support a relatively straightforward negligence claim. *See id.* Thus, the

---

[2] *See* MEMORANDUM FROM THE MAJORITY STAFF OF THE SUBCOMMITTEE ON NAT'L SEC. TO CHAIRMAN RUSSELL 1 (Jan. 2, 2019).

Complaint "allege[s] a plausible set of facts establishing jurisdiction." *Sebelius*, 691 F.3d at 652. The Court now turns to exhaustion.

### B. Cardenas exhausted her administrative remedies by presenting her claim to the BOP before suing.

Having found Cardenas states a plausible FTCA claim, the Court must next ask if she exhausted her administrative remedies. *See* 28 U.S.C. § 2675. This isn't a procedural "gotcha," but a valuable safeguard for due process. *See McNeil v. United States*, 508 U.S. 106, 112 (1993) ("[G]iven the clarity of the statutory text, it is certainly not a 'trap for the unwary.' . . . As we have noted before, 'in the long run, experience teaches that strict adherence to the procedure requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). The Government says Cardenas never exhausted her administrative remedies, noting "[a] claim is considered 'presented' to the federal agency when an SF-95 or other written notification of an incident is filed with the agency." ECF No. 11 at 12.

Looking to the pleadings, the Court must avoid a formulaic approach to exhaustion and determine if Cardenas gave the BOP "a writing that informs the agency of the facts of the incident and the amount of the claim." *Montoya v. United States*, 841 F.2d 102, 105 (5th Cir. 1988); *see also* 28 C.F.R. § 14.2(a). Thinks get tricky here for Cardenas, owing to shoddy complaint-drafting and even worse records-keeping. Because exhaustion is a "jurisdictional prerequisite," *see Gregory v. Mitchell*, 634 F.2d 199, 203–04 (5th Cir. 1981), the Government heavily briefed the topic. *See* ECF No. 11 at 11–13. Having reviewed the Complaint, the Government is right that "Cardenas [doesn't] allege anywhere in her complaint that she has submitted any administrative claim at all to the BOP or any other federal agency, nor does she even generally assert that she has exhausted her administrative claims." *See id.* at 13. Further supporting an inference of non-exhaustion, "[t]he BOP has searched its records where any such administrative tort claim would be maintained and has not identified any claim submitted by or on behalf of Cardenas for the incidents at issue in this action." *Id.* (cleaned up).

5

Before Cardenas responded, the Government's argument seemed bulletproof. But Cardenas's Response provided equally bulletproof evidence that she did in fact present the BOP with her claim. Attached as Exhibit A to the Response is a December 8, 2022, letter sent from Cardenas's counsel to the BOP. *See* ECF No. 17-1 at 2–5. The letter—captioned "re: Federal Torts Claims Act (28 U.S.C. § 1346 et seq)"—satisfies the FTCA's presentment requirements. *See generally* 28 C.F.R. § 14.2(a). The letter provides "written notice of the incident." *See* ECF No. 17-1 at 2–3 (recounting the case's underlying facts). The letter provides "a claim for money damages in a sum certain." *See id.* at 4 ("Our Client demands compensation from the federal government for this abuse in the amount of **$1,245,000**."). And the letter provides "the title of the person signing" along with their "authority to present a claim" on Cardenas's behalf. *See id.* The letter thus checks all applicable boxes.

In its Reply, the Government argues that "based on the demand letter filed with her response . . . it is apparent that Cardenas' administrative tort claim did not allude to any complaints for failure to timely investigate sexual assault reports against male correctional officers or failure to timely investigate or prosecute her own report of sexual abuse." ECF No. 20 at 6. But the letter's general contours provided the BOP with sufficient notice of Cardenas's claims and the overarching facts upon which they are based. *See* ECF No. 17-2 at 2–4. Fair notice is required, not a granular explication of every theory of liability. Thus, the Government's Reply cuts against the thrust of Fifth Circuit precedent, which had adopted an "expansive" understanding of the FTCA notice requirement. *See Montoya*, 841 F.2d at 104 (collecting cases).

To conclude, it's unclear why the notice letter wasn't pleaded in the Complaint (or why the BOP's record-search didn't reveal the letter). In any event, this evidence solidifies "the court's resolution of [this] disputed fact[]" in Cardenas's favor. *See Kling*, 60 F.4th at 284. Having found Cardenas pleads a plausible FTCA claim and exhausted her administrative remedies, the Court now turns to sovereign immunity.

### C. The discretionary-function exception bars most (but not all) of Cardenas's claims.

Derived from the English legal fiction that "the King can do no wrong" and thus can't be sued in his own courts, sovereign immunity bars lawsuits against the Government where the Government hasn't abrogated its presumptive immunity. *See United States v. Lee*, 106 U.S. 196, 205 (1882). The only problem, of course, is that the King can and will do wrong when not held accountable. So Congress passed the FTCA in 1946 to waive sovereign immunity for certain torts caused by:

> [T]he negligent or wrongful act or omission of any employee of the Government while acting within the scope of his [or her] office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *see Ashford v. United States*, 511 F.3d 501, 504–05 (5th Cir. 2007) (explicating the Fifth Circuit's FTCA case law).

Loath to hang Uncle Sam out to dry, Congress carved out exceptions to the FTCA's sovereign-immunity waiver. *See* 28 U.S.C. § 2680 (enumerating FTCA's exceptions). One popular safe harbor for would-be government tortfeasors is the "discretionary-function" exception, which bars claims "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." *Id.* § 2680(a). Put differently, "[t]he discretionary function exception withdraws the FTCA's waiver of sovereign immunity in situations in which, although a government employee's actions may have been actionable under state tort law, those actions were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy." *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010).

There's a two-part test to see if the exception applies. *Id.* at 567 (citing *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)). *First*, the Court asks if the challenged act involved "judgment or choice on the part of the employee." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). *Second*, if the act involved judgment or choice, the Court asks if such judgment was the "kind that the discretionary function exception

7

was designed to shield." *Gaubert*, 499 U.S. at 322–23; *see also Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (noting the exception was designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort"). At this stage, Cardenas "must invoke the court's jurisdiction by alleging a claim that is facially outside the discretionary function exception." *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 & n.3 (5th Cir. 2009).

The Complaint's allegations concern a mix of discretionary and non-discretionary functions. For simplicity, the Court groups them into two categories: (1) general allegations of negligence regarding the BOP's employee-management and inmate-transfer decisions and (2) allegations that the BOP negligently breached provisions in PREA and the BOP's Standards of Employee Conduct. As explained below, the discretionary-function exception bars the first category, but certain claims in the second category survive.

### 1. Cardenas's general claims of negligent employment decisions and inmate transfers are precluded.

Cardenas alleges an array of negligent acts and omissions related to the hiring, firing, supervision, and management of BOP employees, as well as BOP's decisions regarding inmate transfers.[3] The discretionary-function exception precludes these general claims. But many of her allegations rooted in PREA or the BOP's Standards of Employee Conduct involve these same subjects. As explained further below, those

---

[3]To take just a few examples, the Complaint alleges: "[t]he [SIS] assigned to FMC-C . . . [was] grossly negligent and derelict in their duties to manage, supervise, and investigate male officers at FMC-C engaged in the sexual harassment and abuse of female inmates" (ECF No. 1 at 3); the Prison Investigative Authorities "failed to timely investigate and prosecute the criminal activity perpetrated by [Curiel]" (*Id.*); "the annual [PREA] Audits for FMC-C are materially incomplete as the auditors failed to interview any female inmates that were involved in or witness to PREA violations" (*Id.* at 7); "[d]espite the known issues of abuse, the FMC-C Management Team granted Officer Curiel <u>unrestricted</u> and <u>unsupervised</u> contact with Plaintiff" (*Id.* at 12); and "the FMC-C Management Team and the Prison Investigative Agencies breached their duties to Plaintiff by negligently supervising, managing, and retaining Officer Curiel during Plaintiff's incarceration at FMC-C" (*Id.* at 14).

8

allegations aren't automatically precluded just because these topics are typically left to agency discretion. The law doesn't categorically determine employment decisions and inmate transfers are discretionary; it merely notes such decisions *generally* involve BOP discretion. Thus, the Court finds the discretionary-function exception precludes any negligence claims that aren't rooted in violations of specific legal mandates required for the BOP and Prison Investigative Authorities.

As noted above, discretionary functions involve employee "judgment or choice." *Dickson*, 11 F.4th at 312. "For example, 'if a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary.'" *Id.* (citing *Spotts*, 613 F.3d at 567). The Complaint alleges BOP negligence that violated the agency's "stated mission, [which] is to 'protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure.'" ECF No. 1 at 4 (citing FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/agency/ (last visited Nov. 7, 2023)). But while "the [BOP] [must] provide for the safekeeping, care, and subsistence of all federal prisoners," the enabling act "does not indicate the manner in which the duty must be fulfilled." *Spotts*, 613 F.3d at 567. Given the enabling act's silence on how the BOP must carry out this duty, courts have consistently held that the discretionary-function exception precludes general negligence claims rooted in employee-management or inmate-transfer decisions.[4] Thus, those claims must go.

---

[4] *See, e.g., Dickson*, 11 F.4th at 313 ("[F]ederal statutes confer discretion on the BOP to classify prisoners and place them in institutions in accordance with public policy."); *Dorsey v. Relf*, No. 4:12-cv-021-A, 2013 WL 791604, at *5 (N.D. Tex. Mar. 4, 2013) (collecting cases) ("Decisions regarding hiring, supervising, training, and retaining employees involve many public policy considerations and matters of judgment and choice for [BOP] employees making those decisions. Decision-making employees must evaluate and weigh the qualifications of applicants, consider staffing requirements, conduct ongoing assessment of training needs, and make numerous daily decisions regarding supervision of employees. These multi-factored choices require the balancing

The Court recognizes this may substantially handicap Cardenas's case, as the Complaint devotes many pages to waxing poetic about the BOP's general responsibility of protecting inmates from sexual abuse. *See, e.g.*, ECF No. 1 at 3–9. But even if the Complaint alleges clear failures within the BOP vis-à-vis this important responsibility, the Court isn't at liberty to override the discretionary-function exception. By creating the exception, "Congress took steps to protect the Government from liability that would seriously handicap efficient government operations." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984). If agency decisions regarding every employment decision or inmate transfer subjected the BOP to potential tort liability, efficient operation of America's prison system would be hindered. Accordingly, the Court must deny Cardenas's general claims of negligence. However, as explained further below, her case lives to fight another day because the Complaint shows certain violations of non-discretionary duties.

### 2. Cardenas's claims for violations of PREA Sections 115.61 and 115.76 aren't precluded.

While her general claims must be dismissed, Cardenas also alleges specific actions/inactions by which the BOP violated PREA. Here, the Fifth Circuit's opinion in *Dickson* provides guidance. There, the Court noted that "it may be possible that other policies remove components of [the BOP's] general discretion." 11 F.4th at 313. The Court upheld the trial court's application of the discretionary-function exception, but only because Dickson failed to allege violations of "nondiscretionary duties" or otherwise show "that they were discretionary decisions not based on considerations of public policy." *Id.* Guided by *Dickson*, the Court must now see if Cardenas alleges (1) violations of nondiscretionary duties or (2) violations of discretionary duties that aren't based on public policy.

The Complaint alleges the following PREA violations:

> Section 115.11 – failing to enforce zero tolerance policy as it related to the sexual abuse of Plaintiff and other inmates at FMC-C.

---

of competing objectives and are of the nature and quality that Congress intended to shield from tort liability.") (citations omitted).

10

> Section 115.13 – failing to supervise and monitor (video surveillance) one-on-one inmate/officer contact as it relates to the sexual [abuse] of Plaintiff and other inmates by Officer Curiel.
>
> Section 115.17 – hiring, promoting and retaining officers who 'may' have had improper sexual contact, including Officer Curiel.
>
> Section 115.43 – punishing sex victims with involuntary segregated housing, loss of privileges and work permits.
>
> Section 115.61 – failing to report suspicion of sexual abuse as it related to the conduct of Officer Curiel with female inmates including Plaintiff.
>
> Section 115.67 – failing to protect inmates from retaliation after reporting abuse including relocating Plaintiff and placing her in isolated confinement.
>
> Section 115.76 – failing to discipline staff for sexual misconduct, including Officer Curiel.

ECF No. 1 at 15. The Government cites several cases from other circuits in arguing "PREA . . . grant[s] discretion to federal officials as to [its] implementation and execution." *See* ECF No. 11 at 20. The Court isn't convinced.[5] Rather, the determination must be provision-specific, as sweeping statutes like PREA often contain both mandatory and non-mandatory/aspirational provisions.

---

[5]The Government's cases on this point don't support a conclusion that PREA gives BOP officials carte blanche vis-à-vis execution of their statutory duties. For instance, the plaintiff in *Gladney* alleged negligence because the BOP didn't maintain around-the-clock inmate monitoring. The Ninth Circuit never said the BOP had *no mandatory obligations* under PREA, but it applied the exception because "[n]either [PREA] nor any implementing regulation imposes a mandatory duty on the [BOP] to monitor prisoners continuously." *Gladney v. United States*, 858 F. App'x 221, 223 (9th Cir. 2021). The same was true in *L.C.*, where the court noted "L.C.'s claim under 18 U.S.C. § 4202(a) . . . must be dismissed under the discretionary function exception *unless the complaint alleges the existence of a specific and immediate threat* against L.C." *L.C. v. United States*, No. 5:21-cv-00124-GFVT, 2022 WL 1179400, at *8 (E.D. Ky. Apr. 19, 2022) (cleaned up and emphasis added). By noting the plaintiff could have pleaded specific facts such that the exception wouldn't apply, the Court left open the possibility of non-discretionary PREA mandates. Thus, the Court's broader recognition of BOP discretion can't be read as categorically as the Government suggests.

It's worth noting the Government forgets two important interpretive canons: *expressio unius est exclusio alterius* and *generalia specialibus non derogant*.[6] Courts like to state the obvious in Latin to make it sound fancier, but these canons just mean (1) saying one thing means you aren't saying the opposite and (2) specific laws beat out general laws. Applying these principles, even if PREA leaves room for agency discretion at a broad level, that discretion doesn't extend to areas where PREA mandates specific conduct. *See Gaubert*, 499 U.S. at 322 ("The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'") (citing *Berkovitz*, 486 U.S. at 536). Thus, Cardenas's PREA claims survive to the extent they sound in concrete statutory requirements. *See id.* at 324 (noting that where a plaintiff alleges violations of specific mandates, "there will be no shelter from liability because there is no room for choice and the action will be contrary to policy").

On a claim-by-claim basis, the Court determines the following for each of Cardenas's PREA claims:

***Section 115.11*** – Cardenas's claim that the BOP negligently "fail[ed] to enforce zero tolerance policy as it related to the sexual abuse of Plaintiff" fails because Section 115.11(a) requires only the existence of a "written policy mandating zero tolerance toward all forms of sexual

---

[6]For the first—"the expression of one thing is the exclusion of its alternative"—the Court can't determine an agency has discretion for specific actions required by a specific provision of law. *See Expressio unius est exclusio alterius,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("A canon of construction holding that to express or include one thing implies the exclusion of another, or of the alternative. For example, the rule that 'each citizen is entitled to vote' implies that noncitizens are not entitled to vote."). For the second—"the general doesn't derogate the specific"—the Court must endeavor to interpret PREA in a way that's logically consistent and doesn't allow general assertions of discretion to overpower specific statutory requirements. While commonly applied in the context of competing (*e.g.*, "older" and "newer") statutes, the canon applies with equal force to competing provisions within the same legislation. *See Generalia specialibus non derogant*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The doctrine holding that general words in a later statute do not repeal an earlier statutory provision dealing with a special subject.").

abuse and sexual harassment," leaving matters of implementation and execution to agency discretion. *See* 28 C.F.R. § 115.11(a). And Cardenas doesn't allege violations of the policies enumerated in Section 115.11(b), (c).

***Section 115.13*** – Cardenas's claim that the BOP negligently "fail[ed] to supervise and monitor (video surveillance) one-on-one inmate/officer contact" fails because it isn't rooted in specific, mandatory requirements. Section 115.13 requires the BOP to "make its best efforts" to adequately monitor employee-inmate interactions and suggests video monitoring "where applicable." *See* 28 C.F.R. § 115.13(a). The Section then enumerates eleven considerations that suggest video monitoring may be warranted (*see id.* at § 115(a)(1)–(11)) but leaves analysis of those considerations to the agency. Absent language *requiring* video monitoring, Cardenas's claim under Section 115.13 is precluded. While the Complaint gives ample reason to suggest such monitoring would have been appropriate, the Court is called upon only to apply the law, not to "second-guess" the BOP's decision-making. *See Berkovitz*, 486 U.S. at 536–37.

***Section 115.17*** – Cardenas's claim that the BOP negligently hired Curiel, as someone who "may have had" improper sexual contact with inmates, is precluded because Section 115.17 enumerates certain conditions (28 C.F.R. § 115.17(a)(1)–(3)) under which the BOP may not hire such individuals. As Cardenas's allegations all concern Curiel's impropriety *after* he was hired, nothing indicates his initial hiring violated Section 115.17.

***Section 115.43*** – Cardenas's claim that the BOP negligently placed her and other victims in "involuntary segregated housing" is precluded because the Complaint doesn't allege facts showing BOP officials at FMC-C failed to assess adequate alternatives as required by the statute. *See id.* at § 115(a) (requiring that "[i]nmates at a high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made"). PREA doesn't prohibit segregated housing for potential victims; it articulates an assessment the BOP must conduct before making that

call. Absent any allegation that the BOP failed to make such an assessment, Cardenas's claim under Section 115.43 is precluded.

***Section 115.61*** – Cardenas's claims that the BOP negligently "fail[ed] to report suspicion of sexual abuse as it related to the conduct of Officer Curiel" survive because those allegations indicate the BOP violated clear legal obligations set forth in Section 115.61. *See James v. LaCroix*, No. 1:16-cv-00138, 2017 WL 2602598, at *6 (W.D. La. Apr. 17, 2017) (analyzing Section 115.61, noting "[t]he new policy and rules for handling inmate complaints of sexual harassment and sexual assault leave BOP officers no discretion as to whether to follow those procedures"). While the BOP may have discretion regarding how to report sexual impropriety, it doesn't have discretion to *not* report impropriety. Thus, Cardenas's claim under Section 115.61 isn't precluded by the discretionary-function exception.[7]

***Section 115.67*** – Cardenas's claims that the agency negligently "failed to protect" her from sexual harassment are precluded because Section 115.67 states "[t]he agency shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment." 28 C.F.R. § 115.67(a). Subject to certain enumerated conditions, the agency is left with discretion to implement and execute the required policy. Cardenas doesn't say the BOP never established a policy; she says the BOP failed to execute the policy. Accordingly, her claim under Section 115.67 is precluded.

***Section 115.76*** – Cardenas's claim that the BOP negligently failed to take timely disciplinary action against Curiel survives because the Complaint's allegations establish violations of clear statutory mandates. *See* 28 C.F.R. § 115.76(a)–(b) (requiring disciplinary action for violations

---

[7]The Government correctly notes that Cardenas "provides no specific information about any ignored sexual assault reports at the facility." ECF No. 11 at 16. The Court recognizes that "[a] plaintiff should be ready to present some amount of basic jurisdiction evidence, or at least raise an inference that further discovery will uncover such evidence, from the outset of litigation." *In re Southern Recycling, LLC*, 982 F.3d 374, 386 (5th Cir. 2020). But evidence of such reports is the precise kind of evidence that discovery is likely to uncover, so the Court is disinclined to prematurely act upon the absence of such evidence in the face of clear allegations within the Complaint.

of sexual misconduct policies and mandating termination as "the presumptive disciplinary sanction for staff who have engaged in sexual abuse"). So the BOP had discretion regarding *how* to discipline Curiel, not *whether* to discipline him. Logically, the BOP's alleged violation of this requirement relates to its alleged violation of Section 115.61's reporting requirement. While the BOP investigated Curiel after the sexual assault, the Complaint alleges that the BOP received reports of misconduct before the assault but didn't take timely disciplinary action. *See, e.g.*, ECF No. 1 at 15–16. Accordingly, Cardenas's claim under Section 115.76 isn't precluded by the discretionary-function exception.

### 3. Cardenas's claims for violations of Program Statements 3420 and 5324 aren't precluded.

The Court must conduct a similar claim-by-claim analysis of Cardenas's claims under the BOP's Standards of Employee Conduct. Cardenas says the BOP violated numerous requirements under Program Statements 3420 and 5324, particularly by "failing to report the sexual abuse of Plaintiff and other female inmates by Officer Curiel [and] allowing him to continue his criminal assaults and harassment; failing to stop the sexual abuse of female inmates by Officer Curiel after notice and knowledge of prior assaults; and failure to train Officer Curiel on the Program Statements and procure his signature certifying same." ECF No. 1 at 15.

At face value, these allegations support a finding that the BOP violated at least Program Statement 3420.11, which requires immediate reporting of such sexual misconduct not to exceed twenty-four hours. *See* U.S. DEP'T OF JUSTICE, BUREAU OF FED. PRISONS PROGRAM STATEMENT 3420.11 (2015). ("[A]s soon as practicable (but not later than 24 hours) [employees must] report to their CEO (or other appropriate authority such as the [OIA] or [OIG] any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation."). While the Government rightly acknowledges that the BOP has discretion regarding *how* to report such misconduct, *see* ECF No. 11 at 21, Cardenas alleges that the BOP failed *entirely* to report certain incidents. ECF No. 1 at 15. Cardenas's claims under Program Statement 3420 thus survive the discretionary-function exception.

For the same reason, the Complaint supports a finding that the BOP violated Program Statement 5324.12, which requires that "[a]llegations of sexually abusive behavior receive prompt intervention upon report." U.S. DEP'T OF JUSTICE, BUREAU OF FED. PRISONS PROGRAM STATEMENT 5324.12 (2015). While reasonable minds may differ as to what constitutes "prompt intervention," the Complaint says the BOP failed to intervene at all and only took action after Curiel's sexual assault of Cardenas. *See, e.g.*, ECF No. 1 at 15–16. While the Court recognizes the BOP's general discretion in making these decisions, Program Statement 5324 leaves no room for discretion as to whether the BOP must report and intervene in circumstances like those detailed in the Complaint. *See LaCroix*, 2017 WL 2602598, at *6. Accordingly, these claims also survive preclusion.

### D. The Court need not determine scope-of-employment questions at this stage.

So where are we? Cardenas alleges a plausible FTCA claim and exhausted her administrative remedies. Still, most of her claims are precluded because they speak to areas committed to agency discretion. But certain claims dealing with reporting, investigating, and responding to sexual misconduct survive because the Complaint alleges violations of specific legal mandates required of the BOP and Prison Investigative Authorities. The Court now turns to the Government's argument that "[t]he United States has not waived sovereign immunity for torts committed by an employee when acting outside the scope of his employment." ECF No. 11 at 23.

#### 1. The scope of Curiel's employment vis-à-vis Cardenas's sexual assault is irrelevant.

As a starting point, the Parties shoot past each other when briefing this point. The Government stresses ample case law that Curiel's sexual misconduct was on him alone, as such conduct is firmly beyond the scope of his employment. *See* ECF No. 11 at 23–24. The Court isn't quite sure why the Government devoted multiple pages of briefing to the proposition that sexual assault wasn't a requirement for Curiel's position with the BOP. In any event, Cardenas briefs an entirely different question by looking not the scope of Curiel's employment, but

rather to the scope of employment for all relevant officials tasked with reporting sexual misconduct and responding appropriately. *See* ECF No. 1 at 11 ("The correctional officers are federal employees subjecting the United States . . . to liability for improper actions committed within the course and scope of their employment."). In this way, the Government counters an argument never made, as Cardenas never said Curiel's sexual assault was within the scope of his employment.

The Government provides no briefing on the scope of employment for other relevant correctional officers. *See* ECF No. 11 at 23–25. Rather, it misleadingly cites to the Complaint in arguing "Cardenas may be attempting to assert some kind of vicarious liability against the United States for the sexual misconducted committed by Curiel." *Id.* at 24–25. In relevant part, the Government quotes the following from Cardenas:

> So too here. In her complaint, Cardenas focuses on more general allegations of negligence against the United States but fails to draw a clear line distinguishing her claims of alleged negligence against the various DOJ entities from her assertions of sexual harassment and assault by Curiel. (*See* Doc. 1, ¶¶ 38-46.) In fact, she explicitly states in the complaint she is "entitled to damages from the United States of America . . . for the negligence of . . . Officer Curiel." (Doc. 1, ¶ 46.) Thus, it appears Cardenas may be attempting to assert some kind of vicarious liability

ECF No. 11 at 24. While the humble ellipsis is a punctuation stalwart that streamlines bulky citations, the Court would encourage litigants to use it sparingly, lest its overuse detracts from the citation's veracity. With the gaps filled in, Cardenas actually asserts:

> 46. Plaintiff is entitled to damages from the United States of America under the Federal Tort Claims Act for the negligence of the FMC-C Management Team, the Prison Investigative Agencies and Officer Curiel in an amount to be determined at trial.

ECF No. 1 at 16. The point is clear: Curiel is relevant, but Cardenas's claims go beyond his individual acts of sexual misconduct. And to the extent Curiel is relevant, there are no live questions regarding the scope of his employment vis-à-vis his sexual misconduct with Cardenas. Accordingly, the Court finds this line of inquiry immaterial.

### 2. The Court declines to resolve remaining scope-of-employment questions at this stage of the proceeding.

Its possible a number of individuals will be relevant to Cardenas's claims down the road; for now, her allegations refer to the overarching entities responsible for reporting and responding to acts of sexual misconduct at FMC-Carswell. The Court declines to make a determination as to what responsibilities were within the scope of employment for different officials at this stage because such questions are "inextricably intertwined" with the merits of Cardenas's claims. *See Pickett*, 37 F.4th at 1019. The Court must resolve three questions to reach this conclusion. *First*, does the "statutory source of jurisdiction differ[] from the source of the federal claim?" *Southern Recycling*, 982 F.3d at 379–82. *Second*, can "the jurisdictional issue . . . be extricated from the merits and tried as a separate issue?" *Id.* (citation omitted). *Third*, does "judicial economy favor[] early resolution of the jurisdictional issue?" *Id.* Here, these questions favor deferring leftover scope-of-employment questions until a later stage of the proceeding.

*First*, the FTCA only applies to actions of law enforcement officials undertaken in the scope of their employment. *Dickson*, 11 F.4th at 315. Insofar as the Court's jurisdiction rests upon the presence of an FTCA claim, "the statutory source of jurisdiction [doesn't] differ[] from the source of the federal claim." *Southern Recycling*, 982 F.3d at 379–82. This factor thus favors declining a scope-of-employment determination at the present stage. *See Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985).

*Second*, the jurisdictional issue can be tried separately. *See Southern Recycling*, 982 F.3d at 379–82. Indeed, subsequent discovery would be required before scope-of-employment questions could be resolved at all. Currently, the pleadings implicate entire agencies, not people (except Curiel). While the Court couldn't reach an informed decision without

18

further discovery, scope-of-employment questions could easily be handled by the jury at trial or by the Court via a 12(b)(6) motion or a motion for summary judgment. *See Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56."). Thus, this factor also favors deferring.

*Third*, while judicial economy always favors earlier resolution of disputed facts, the Court's primary duty is accuracy, not efficiency. Furthermore, as the Court stated in *Williamson*:

> [N]o purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his [or her] claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place greater restrictions on the district court's discretion.

645 F.2d at 415. In keeping with the reasoning in *Williamson*, the Court sees no reason to shoehorn merits determinations into the current jurisdictional analysis. Accordingly, this factor also favors determining scope-of-employment questions at a later stage after discovery facilitates more fulsome analysis.

## CONCLUSION

Despite its issues, the Complaint alleges a plausible negligence claim under the FTCA, triggering this Court's jurisdiction. Cardenas exhausted her administrative remedies before suing, so her case can't be tossed on that ground. But many of the Government's sovereign-immunity arguments landed. In particular, the Court **GRANTS** the Government's Motion as to Cardenas's general negligence claims (*i.e.*, those not rooted in violations of clear statutory mandates). The

discretionary-function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Empresa de Viacao Aerea Rio Grandense*, 467 U.S. at 808. The Court is disinclined to cross that boundary here. But the Court **DENIES** the Government's Motion for Cardenas's claims based upon (1) violations of 28 C.F.R. §§ 115.61, 115.76 and (2) violations of BOP Program Statements 3420 and 5324.

**SO ORDERED** on this **15th day** of **November 2023.**

*/s/ Mark T. Pittman*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE